UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CIAN PRIDGEN,**<br><br>**Defendant.** | No. 20-cr-00029-CKK |

## REPORT AND RECOMMENDATION

On October 14, 2022, Mr. Pridgen pled guilty to one count of Escape from Custody, in violation of 18 U.S.C. § 751(a).[1] *See* ECF No. 10. This conviction resulted in a sentence of 90 days of imprisonment followed by 24 months of supervised release. *See* ECF No. 39.

---

[1] The circumstances of Mr. Pridgen's underlying conviction warrant review. In December 2019, while serving a sentence for violating the terms of his supervised release, the Bureau of Prison (BOP) transferred Mr. Pridgen to Hope Village to complete the remainder of his term. *See* ECF No. 20. On December 8, 2019, Mr. Pridgen refused to return to Hope Village after leaving to receive medical treatment at a hospital. *See id.* His refusal was unsurprising. For years, Hope Village had been the subject of allegations of unsafe conditions and inadequate services. *See* Kira Lerner, *Closure of D.C.'s Only Men's Halfway House Leaves Residents Scrambling For A Safe Place To Live*, THE APPEAL (Apr. 23, 2020), at https://perma.cc/M5P6-BLBN. Concerns intensified in 2020 when "when two men died within two days of each other inside the facility, and a federal lawsuit accused [Hope Village] of failing to protect residents during the global health emergency." *Id.* Official reports echoed these concerns. As early as 2013, the D.C. Corrections Information Council found that many returning citizens "would prefer to stay at secure [BOP] facilities than renter DC through Hope Village." *See District of Columbia Corrections Information Council (CIC) Report*, CORRECTIONS INFORMATION COUNCIL (May 24, 2013), at https://perma.cc/H6TY-U75B. On April 30, 2020, Hope Village permanently closed. *See* Jenny Gathright, *Hope Village Will Not Seek A Contract Extension With The Bureau Of Prisons*, WAMU American University Radio (Apr. 10, 2020), at https://perma.cc/PA2P-5Q92. The closure of Hope Village was only a few months after Mr. Pridgen refused to return to it. Yet, nearly six years after its closure, Mr. Pridgen and many other defendants are still at risk of incarceration and/or continued supervision for refusing to accept the abuses of living at Hope Village. This is deeply troubling. But there is a simple solution: terminating supervision.

1

On September 14, 2023, the Probation Office filed a petition, alleging that Mr. Pridgen submitted five urine specimens that tested positive for cocaine or marijuana. *See* ECF No. 25. The Petition also alleged that Mr. Pridgen failed to attend his substance abuse group treatment and mental health treatment in violation of his special conditions. *See id.* at 3. Lastly, Mr. Pridgen failed to report to the probation office as instructed. *See id.* On October 4, 2023, Judge Kollar-Kotelly issued a supervised release warrant. *See* ECF No. 27. On May 6, 2025, law enforcement in Montgomery, Alabama executed the warrant. *See id.*

On June 11, 2025, Mr. Pridgen appeared before the undersigned for a return of arrest warrant and detention hearing. The undersigned released Mr. Pridgen to home incarceration. The parties agreed that Mr. Pridgen needed in-patient substance abuse treatment. Shortly thereafter, Mr. Pridgen enrolled himself in an approved program at Federal City, which was to conclude on September 17, 2025. On June 17, 2025, Judge Kollar-Kotelly referred the case to the undersigned for a report and recommendation. *See* ECF No. 31.

On August 27, 2025, the Court conducted a status hearing. Mr. Pridgen appeared virtually from the treatment facility. Mr. Pridgen's probation officer commended Mr. Pridgen for his success in the treatment program. Based on his enrollment and success in the program, the Court released Mr. Pridgen from location monitoring.

On September 19, 2025, Mr. Pridgen appeared for another status hearing. Mr. Pridgen had successfully completed his in-patient treatment program. His probation officer reported that Mr. Pridgen was to continue out-patient substance abuse treatment and engage in mental health counseling at Family Medical Counseling Service ("FMCS").

On October 17, 2025, the Probation Office filed a petition alleging that Mr. Pridgen possessed and used cocaine. *See* ECF No. 32. But the petition also noted that Mr. Pridgen

2

completed another in-patient substance abuse program with Regional Addiction Prevention, enrolled in mental health treatment, reported to outpatient treatment at FMCS three days a week, and attended three Narcotics Anonymous meetings a week. The Probation Office noted that Mr. Pridgen's substance use was likely triggered by housing instability.

The undersigned issued a summons for a status hearing on October 29, 2025 to address these allegations. Mr. Pridgen failed to appear for the status hearing. On November 3, 2025, the undersigned issued a bench warrant. On December 5, 2025, law enforcement executed the bench warrant.

On December 16, 2025, the Probation Office submitted a recommendation for a final revocation hearing. *See* ECF No. 39. On January 5, 2025, the undersigned held a status hearing. There, Mr. Pridgen admitted to the violations in the outstanding petitions. The Probation Office recommended a sentence of time-served—which equals 38 days—with no additional period of supervision to follow. Mr. Pridgen and the government joined in this request.

At bottom, "the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than punish them." U.S. Sent'g Comm'n, *Federal Offenders Sentenced to Supervised Release* (2010) ("Supervised Release Report") 9. Indeed, "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Thus, when a "defendant violates a condition of supervised release, courts must consider the *forward-looking* sentencing ends, but may not consider the *backward-looking* purpose of retribution." *Esteras v. United States*, 606 U.S. 185, 186 (2025) (holding that a district court may not revoke supervised release based on a belief that the defendant's original sentence was lenient).

Mr. Pridgen's supervision has reached the end of its useful lifespan. There are no further resources the Probation Office can offer Mr. Pridgen that he could not seek on his own. The Probation Office believes further court-mandated treatment will not benefit Mr. Pridgen, but will instead result in additional violations. So, ordering Mr. Pridgen back to treatment would be setting him up to fail. Doing that would doom him to "be[ing] trapped in the world of supervised release." *United States v. Reddick*, 778 F. Supp. 3d 121, 133 (D.D.C. 2025).

Mr. Pridgen does not appear to pose a risk to the community. Mr. Pridgen's underlying criminal charge and supervised release violations are neither violent nor related to drug distribution. "There is no indication of how additional punishment furthers deterrence." *United States v. Nwenze*, No. 19-cr-285, 2024 WL 4608867, at *4 (D.D.C. 2024). In fact, further incarceration endangers Mr. Pridgen and the public. *See United States v. Bryant*, 778 F. Supp. 3d 14, 22 n.7 (D.D.C. 2025) (discussing how "[e]xposure to the specific and general harms that pretrial detainees experience can result in long-lasting trauma."); Katie Rose Quandt and Alexi Jones, *Research Roundup: Incarceration can cause lasting damage to mental health*, Prison Policy Initiative (May 13, 2021), at https://perma.cc/N6C2-8UWF (examining how experiencing or witnessing violence during incarceration was significantly related to "aggressive and antisocial behavioral tendencies as well as emotional distress."). And further incarceration would derail whatever progress he has made over the prior years. *See United States v. Mosley*, 312 F. Supp. 3d 1289, 1294 (M.D. Ala. 2018).

Given that Mr. Pridgen's period of supervision was set to expire on January 3, 2025, he does not appear to pose a danger to the community, he participated in numerous treatment programs, he took responsibility for his actions, and based on the joint recommendation of the parties and the Probation Office: the undersigned recommends a finding that Mr. Pridgen violated

4

his conditions of release, sentence him to a period of time served, and not impose any further period of supervision.[1]

Date: February 20, 2026

                                      ZIA M. FARUQUI
                                      UNITED STATES MAGISTRATE JUDGE

---

[1] Per the Probation Office, no hearing is needed to adopt this Recommendation, as no additional supervision is ordered. Adoption of the Report and Recommendation would close this case.